Argued and submitted June 8, affirmed August 26, 1998

David BOHR,
*Petitioner,*

*v.*

EMPLOYMENT DEPARTMENT
and Burnside Auto Repair,
*Respondents.*

(96-AB-1762, 97-AB-1405; CA A94734)

964 P2d 1031

Sandra A. Hansberger argued the cause and filed the brief for petitioner.

Philip Schradle, Assistant Attorney General, waived appearance for respondent Employment Department.

No appearance for respondent Burnside Auto Repair.

Before Riggs, Presiding Judge, and Landau and Wollheim, Judges.

RIGGS, P. J.

**RIGGS, P. J.**

Claimant seeks review of an order of the Employment Appeals Board, contending that the Board erred in holding that he voluntarily quit work without good cause and therefore is disqualified from receiving unemployment compensation. ORS 657.176(2)(c); OAR 471-30-038.[1] We affirm the Board's order, because the evidence supports the Board's findings and those findings support the Board's conclusion that claimant's employment situation was not so grave that a reasonable and prudent person would have immediately left work.

The Board found that claimant worked for employer as an auto mechanic from August 1, 1994, until he voluntarily quit on May 28, 1996. In February 1996, claimant purchased an engine core from the shop manager for $60. Claimant left the core in employer's shop for more than three months, despite employer's repeated requests that he remove it. Finally, on May 24, 1996, employer's owner told the manager that claimant's core and three others that were also in the shop area would have to be removed that day. Claimant was not at work, but he stopped in briefly later that day. The manager conveyed the owner's message to claimant, and claimant said he would return the next day, a Sunday, with his truck to pick up the core. There is a significant dispute in the evidence at this point. Claimant testified that he recalled the manager answering "fine" and assumed that he had permission to pick up the core on Sunday. Employer's witnesses, including the manager and owner, testified that the manager did not agree to allowing claimant to pick up the core on Sunday, but rather insisted that the core be removed that day or it would be put out with the scrap metal. The Board found:

> "(8) On May 25, 1996, the owner told the manager to remove claimant's engine core along with three others from the interior of employer's business. (9) The owner told the manager to do whatever he had to do to get the engine cores

---

[1] OAR 471-30-038(4) provides that "good cause" for voluntarily leaving work is "such that a reasonable and prudent person of normal sensitivity, exercising ordinary common sense, would leave work. * * * [T]he reason must be of such gravity that the individual has no reasonable alternative but to leave work."

out of the shop that day. (10) *The manager arranged for the removal of the other engine cores from the shop and told claimant that the owner was angry and wanted him to remove his engine core immediately, as well. (11) Claimant told the manager that he would have his truck the following day and that he would pick up the core at that time. (12) The manager said that claimant needed to get his truck and remove the core, and he would loan claimant his hoist for that purpose. (13) Claimant left the shop. (14) The manager moved claimant's engine core out of the shop and left the core in an area where scrap metal was placed for salvage. (15) When claimant had not returned by the time that the shop closed, the manager decided to salvage the core himself.* (16) He placed the engine core in his pickup and took the core home. (17) The owner was not present at the time and was unaware that the manager had taken the engine core." (Emphasis supplied.)

Noticeably absent from the Board's order is a finding that claimant had permission to leave the core another day and a finding that the manager stole the engine core. The Board's findings on those disputed points are consistent with employer's version of the events and implicitly reject claimant's version.

On Sunday, when claimant came to the shop to pick up the core, the doors were locked, and he could not get into the shop. When he came to work on Tuesday, May 28, 1996, claimant noticed that the engine core was missing. Claimant inquired of both the owner and manager, and each denied knowing where the core was. Claimant then found the engine core at the manager's house in his truck. He did not confront the manager with that knowledge, however, for fear of retaliation. Believing that the owner and manager had been untruthful with him and that his work situation would not be tolerable if he pursued return of the engine core or payment for it, without notice to employer claimant collected his tools and quit.

At this point there is a further dispute in the evidence. Claimant testified that after he discovered the engine core at the manager's house he returned to the shop and complained to the owner, and when the owner refused to take any action, he took his tools and left. The owner testified that he

saw claimant pack up his tools and load them into his truck. He then pursued claimant as he was leaving, asking him what was "going on." Claimant explained that he had discovered his engine core at the manager's house and that he could no longer work for employer. The owner testified that he said:

> "You go call the police, you know. If he stole your engine, just report the matter [to the] police - I mean, there's nothing I can do. It's just - I - it's - I mean - I - your engine should have been out of the shop. He told you about it. Whether he took your engine - threw your engine - you said your engine is up at his house. Just go pick up your engine. If it's in the back of his truck, go take it. Go call the police on him. You know, there's nothing I can do for you myself."

The owner testified that after claimant left he then confronted the manager and asked about claimant's engine core. The manager told him that he had taken the core outside for scrap.

When claimant returned a few days later to pick up his last paycheck, the owner encouraged claimant not to quit and offered to mediate claimant's dispute with the manager and possibly secure the return of claimant's $60. The owner also suggested that claimant notify the police. Claimant was aware that the manager had a criminal record, however, and he did not want to get involved in a dispute with him. He did not report the matter to the police or accept the owner's offer to mediate the dispute.

The reasons claimant gave for quitting were that, after the incident, (1) he mistrusted the manager and the owner who he now feared might steal his expensive mechanic's tools, and (2) he feared retaliation by the manager if he confronted him with the taking of the engine core. Although sympathetic to claimant's situation, the Board found, for several reasons, that claimant's concerns about theft and retaliation were merely speculative and that the circumstances did not present a situation so grave as to justify quitting. The Board found that the owner in fact had no knowledge of the manager's removal of the engine core and that he had offered, at the time claimant picked up his last check, to mediate the dispute. The Board found that, in light of claimant's continued failure to remove the engine core

from the shop, claimant did not consider the core so valuable that the loss of the core justified quitting. Although the Board found that the manager had lied about his knowledge of the location of the core, the Board found that, because claimant never confronted the manager, claimant's concerns about the manager's reaction were merely speculative. Further, the Board found that in light of the fact that claimant and the manager had maintained a good working relationship in the past, the manager had no history of violence and claimant had never been threatened with violence by the manager, claimant's fear of retaliation did not justify quitting. Finally, the Board found that claimant's concerns about theft did not justify his departure in light of the fact that in the past claimant and the manager had shared tools without concern for theft. Each of the Board's findings is supported by the evidence and supports the Board's conclusion that claimant's employment situation was not so grave as to justify quitting.

Claimant asserts that there is other evidence that supports the finding that claimant's concerns were justified. As we have noted, claimant and employer presented different version of the events that transpired before the incident that precipitated claimant's resignation. In our review of the Board's order pursuant to ORS 656.298, we conclude that the Board's findings are supported by substantial evidence on the record as a whole. ORS 183.482(8)(c).

Affirmed.